**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 33079**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, October 2007 |
| | ) | |
| v. | ) | 2007 Opinion No. 124 |
| | ) | |
| JANE DOE, | ) | Filed: November 30, 2007 |
| | ) | |
| Defendant-Appellant. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Peter D. McDermott, District Judge; Honorable Bryan K. Murray, Magistrate.

District court order terminating parental rights, <u>affirmed.</u>

Parrish Law Office, Pocatello, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

_____

BURDICK, Justice

Jane Doe appeals the magistrate court's order terminating her parental rights to her four children. She contends that there was not substantial and competent evidence to support the magistrate's finding of neglect. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe is the mother to four children.[1] On August 3, 2005, ruling from the bench, the magistrate court terminated her parental rights to these four children pursuant to I.C. § 16-2005(b). The court then issued written findings and conclusions. Doe appealed this decision to the district court, which affirmed the order terminating her parental rights.

Doe has a long criminal history and has been involved in child protection actions in both Utah and Idaho. Doe's children were first removed from her custody by the State of Utah in

_____

[1] Doe voluntarily terminated her parental rights to a fifth child, born in 2000, who was adopted in Utah prior to this action.

1

2002 following her incarceration. While in that state's custody, it was discovered that the children had been medically and dentally neglected. The following year, Doe regained custody of her children. However, Doe began abusing drugs again shortly thereafter. Following her husband's release from prison, Doe and the family moved to Idaho.

In May 2004 the Idaho Department of Health and Welfare (IDHW) received reports that the children were not enrolled in school, that the family was homeless, and that Doe was using drugs and behaving aggressively. IDHW conducted two home visits, but these did not raise any safety concerns. Then, on June 6, 2004, Doe was arrested and incarcerated on charges of possessing methamphetamine; she left the children unattended at home as a result of the arrest.

The Bannock County Sheriff's Department responded to a call about the children being home alone. When it investigated, it found the condition of the home unsafe and dirty. There was broken, bloody glass on the floor, and drug paraphernalia and a loose razor blade in a bedroom Doe shared with some of the children. Additionally, provisions in the home for the care of young children were inadequate or missing entirely. The sheriff's department declared the children in imminent danger and placed them in the custody of IDHW. None of the children cried or asked for their mother when IDHW took them into custody.

The children also had a number of health and behavior issues when they were taken into custody by IDHW. The oldest daughter (age 12) had a bandaged arm. Prior to her mother's arrest she had cut her arm on a broken window and a neighbor had taken her to the hospital. The daughter received thirty-nine stitches. The oldest son (age 7) had scrapes on his leg from jumping off of the roof of the home, needed dental work and had fallen behind in school. The youngest daughter (age 3) had thick cradle cap, thinning hair and problems with appropriate boundaries. The youngest son (age 15 months) had large burn blisters on his hands, a high fever and sores from his hands to his elbows, near his feet and behind his knees. The sores on his feet were bleeding, preventing him from wearing shoes. He was behind developmentally, neither walking nor talking.

Doe visited with her children once prior to her release on July 16, 2004. After her release, she and IDHW developed a reunification plan. However, prior to completing the reunification plan, Doe was arrested and incarcerated again on charges of extortion, possession of methamphetamine, failure to appear and driving without privileges. Doe remained in jail from

September 15, 2004, until she was sentenced in January 2005. Doe was sentenced to a rider and then released in July 2005.

Since Doe's children were placed in foster care, she has only had limited contact with her children. In 2004 Doe had four in-person visits, one telephone visit, and one visit in jail. In 2005 Doe had three visits with her children, all through glass while she was held in jail.

On March 17, 2005, while Doe was serving her rider in Ada County, IDHW filed a petition for termination. The magistrate court held a trial concerning the fathers' rights on May 25, 2005, and terminated their rights on June 23, 2005.[2] Then, on August 3, 2005, the magistrate court held a trial concerning Doe's parental rights. At the end of the trial, the court announced its decision from the bench. It then reduced its decision to writing and entered a decree terminating Doe's parental rights on August 9, 2005. Doe appealed this decision to the district court, which affirmed the magistrate court on April 18, 2006. Doe now appeals to this Court.

## II. STANDARD OF REVIEW

"Where . . . the issues before the appellate court are the same as those considered by the district court sitting in an appellate capacity, the appellate court will review the trial record with due regard for, but independently from, the district court's decision." *Doe v. Roe*, 133 Idaho 805, 807-08, 992 P.2d 1205, 1207-08 (1999) (alterations in original)(quotations and citations omitted). This Court must determine if the magistrate's decision was supported by substantial and competent evidence. *Doe I v. Doe*, 138 Idaho 893, 900, 71 P.3d 1040, 1047 (2003). We conduct an independent review of the record that was before the magistrate court, *Roe Family Services v. Doe,* 139 Idaho 930, 934, 88 P.3d 749, 753 (2004), in order to determine whether the magistrate's decision is supported by "objectively supportable grounds." *In re Doe*, 142 Idaho 594, 599, 130 P.3d 1132, 1137 (2006).

## III. ANALYSIS

The underlying action comes to this Court pursuant to a petition filed under Title 16, chapter 20 of the Idaho Code, which provides for the termination of parent-child relationships on either a voluntary or an involuntary basis. "Implicit in [the Termination of Parent and Child Relationship] act is the philosophy that wherever possible family life should be strengthened and preserved. . . ." I.C. § 16-2001. "A parent's right to custody, care and control of his or her child

---

[2] None of the fathers have appealed these decisions.

3

is a fundamental liberty right protected by the Fourteenth Amendment." *In re Bush,* 113 Idaho 873, 875, 749 P.2d 492, 494 (1988).

At the time the petition was filed, the State could petition the court for termination of the parent-child relationship when it was in the child's best interest and any one of the following five factors existed: (a) abandonment, (b) neglect or abuse, (c) lack of a biological relationship between the child and a presumptive parent, (d) mental incapacity of the parent, or (e) where termination is in the best interest of the parent. I.C. § 16-2005 (2005); 2003 Idaho Sess. Laws, ch. 260 § 1.[3] Each statutory ground is an independent basis for termination. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991).

Doe first asserts that the magistrate focused too narrowly on certain testimony when finding that she had neglected her children and such a narrow focus prevents a fair assessment of the children's living conditions. Doe maintains that to properly reach a finding of neglect, the magistrate court must examine the current conditions of the children living with the parent. Doe also argues that the magistrate failed to take into account that she had substantially complied with the case plan.

Such assertions simply ask this Court to disregard the function of the trial court— weighing evidence. It is well established that appellate courts in Idaho do not reweigh evidence. *See, e.g., State v. Doe*, 143 Idaho 383, 388, 146 P.3d 649, 654 (2006). Instead, we defer to the trial court's unique ability to "accurately weigh the evidence and judge the demeanor of the witnesses" and take into account the trial court's "superior view of the entire situation." *Doe,* 133 Idaho at 809, 992 P.2d at 1209 (citations omitted). Moreover, magistrate courts have "broad discretion in determining whether evidence is or is not too remote" to be relevant to a termination action. *In re Dayley*, 112 Idaho 522, 525, 733 P.2d 743, 746 (1987). There is no

---

[3] In 2005, the legislature amended Idaho Code § 16-2005. It now provides:
> (1) The court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist:
>> (a) The parent has abandoned the child.
>> (b) The parent has neglected or abused the child.
>> (c) The presumptive parent is not the biological parent of the child.
>> (d) The parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.
>> (e) The parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority.

indication in either the magistrate court's oral findings or its decree that it took a narrow focus, or that it disregarded Doe's rehabilitation efforts. Doe never argued below that this evidence was irrelevant, and the magistrate implicitly determined that evidence of the conditions of the home on the day the children were removed is relevant to the determination of neglect. As such, the magistrate did not err in considering this evidence.

Doe also argues that the current conditions that exist at the time of hearing are the only relevant issues. We disagree. As previously stated, the court has broad discretion in determining what evidence is too remote. Certainly the prior history of the family before the State's intervention as well as conditions which exist at intervention are admissible to prove the underlying allegation supporting termination. Current conditions may be admissible, subject to evidentiary standards and judicial discretion, to show any number of issues. These could include continued neglect, abuse or abandonment or mitigating issues that may call for more rehabilitative measures short of termination. It can never be argued current conditions are all that may be examined by the magistrate court in making its decisions.

Doe next contends that the magistrate court erred by considering her incarceration as a factor when determining whether to terminate her parental rights. She argues that *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002), and *In re Doe*, 142 Idaho 594, 130 P.3d 1132 (2006), establish that a court cannot rely on evidence of past convictions or current incarceration when determining parental termination cases, as such evidence is not substantial and competent evidence of neglect in and of itself.

Doe misconstrues these cases. First, *Doe v. State* recognizes that a court must consider both past and current efforts by a parent to maintain a parent-child relationship. 137 Idaho at 61-62, 53 P.3d at 344-45. This Court recognized that the father, incarcerated since before his son's birth, had made every effort to maintain a parent-child relationship and remanded the case for the magistrate court to consider both the evidence of Doe's conduct while incarcerated and after his release. *Id*. at 762, 53 P.3d at 345. Likewise, *In re Doe* does not stand for the proposition that courts cannot consider evidence of current or past convictions. Rather, this Court concluded that the magistrate court erred by focusing solely upon the mother's conviction while ignoring the Department's only witness who testified that termination would not be in the child's best interest and had not been impeached. 142 Idaho at 597-98, 130 P.3d at 1135-36. This Court noted that

I.C. § 16-2005(1).

5

evidence of past criminal conduct "is certainly relevant in considering whether to terminate . . . parental rights[,]" *id.* at 597, 130 P.3d at 1135, but concluded that other testimony that was neither impeached nor improbable and confirmed by the record demonstrated that the magistrate's decision was not supported by substantial and competent evidence, *id.* at 598, 130 P.3d at 1136.

The magistrate did not rely exclusively on Doe's past convictions or recent incarceration when making his decision, and there is substantial and competent evidence regarding the condition of the home, the medical, dental and behavioral problems of the children, and Doe's inability to provide the parenting that her children need to support the magistrate's termination order.

At the time the petition for termination was filed, I.C. § 16-2005(b) defined neglect as "a situation in which the child lacks parental care necessary for his health, morals and well-being." 2003 Idaho Sess. Laws, ch. 260 § 1. In this case, the magistrate court found that the facts supported a finding of neglect. It found that Doe did not provide financial support for the children while they were in the custody of the state of Utah, and that when Utah took the children into custody they suffered from dental and medical neglect. It also found that during the family's time in Idaho, the children were not in school, were not supervised and that the home environment was unstable, including incidents of domestic violence in the home. Additionally, at the time the children were taken into custody, the home was "filthy, dirty and dangerous." Moreover, the court found that Doe made minimal efforts at reunification, instead engaging in criminal activity which resulted in her incarceration. The court also found that Doe had taken programs while in prison, but there was no evidence that she had incorporated what she had learned into her life. Finally, the court found no evidence that Doe was available to parent her children, who lived in the Pocatello area, as she had chosen to remain in Ada County after her release and had no plans to return to southeastern Idaho, and that the children needed a large support network which Doe could not provide as a single parent.

All of these findings are supported by substantial and competent evidence. Emee Drews, a social worker from Utah, testified that the children needed extensive dental work and lacked immunization records when they were taken into custody. She also testified that Doe failed to pay any child support during the time her children were in Utah's custody. Doe herself testified that she and the children left their home in Fort Hall, taking only the clothing on their backs, and

6

that they fled from a domestic violence situation. Toni Vollmer, a lieutenant with the Bannock County Sheriff's Department who declared the children to be in imminent danger, testified to the conditions of the home at the time the children were taken into custody, including broken and bloody glass on the floor and drug paraphernalia in one of the bedrooms. Jason Norman, the social worker who took the children into custody, testified to the same conditions and also testified that there were no provisions to care for young children in the home. He also testified to a general lack of parental supervision which could have prevented the physical injuries present on the children on the day he took them into custody. Donna Cunningham, the children's foster mother, testified to the injuries to the children, as well as their behavioral problems such as the older son being behind in school, the younger daughter having problems with inappropriate boundaries and the younger son being behind developmentally.

Additionally, Doe testified to her long criminal history and long history of drug abuse. She also testified that at the time of trial she had been hired for a part-time job, but had not yet started work, that she was living in a women's shelter in Boise, that she did not have a car or a valid driver's license and that she had paid no child support during the time her children were in state custody.

Therefore, we hold that the magistrate did not err in finding neglect and ordering termination of Doe's parental rights.

## IV. CONCLUSION

We affirm the order terminating Doe's parental rights because there was substantial and competent evidence supporting the magistrate's finding of neglect under I.C. § 16-2005(b) (2005).

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**

7