IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket Nos. 37628 & 37629

| | |
|---|---|
| IN THE MATTER OF:  JANE DOE, JOHN DOE, JOHN DOE I, AND JANE DOE I, CHILDREN UNDER EIGHTEEN YEARS OF AGE. | ) ) ) ) |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) |
| Petitioner-Respondent, | ) ) |
| v. | ) ) |
| JANE DOE II and JOHN DOE II, | ) ) |
| Respondents-Appellants. | ) ) ) |

2010 Opinion No. 55

Filed: August 9, 2010

Stephen W. Kenyon, Clerk

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Carolyn M. Minder, Magistrate.

Orders terminating parental rights, <u>affirmed</u>.

Layne Davis of Davis & Walker, Boise, for appellant Jane Doe II.

Alan E. Trimming, Ada County Public Defender; Adam C. Kimball, Deputy Public Defender, Boise, for appellant John Doe II.

Hon. Lawrence G. Wasden, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

In these consolidated appeals, Jane Doe II and John Doe II appeal from the magistrate's orders terminating their parental rights to their children S.C., B.C., M.C., and E.C.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Between October 2001 and September 2009, the Idaho Department of Health and Welfare received eighteen referrals regarding Jane and John Doe and the care of their children. Throughout this time period, the Department provided extensive in-home services and other

resources to Jane and John in order to address concerns about the health and safety of their children. In January 2006, three of the children were declared to be in imminent danger due to possible sexual abuse by John and the unsanitary living conditions of the home.[1] At that time, the children were removed from the custody of their parents and placed in foster care. After an investigation, the children were reunified with their parents in May 2006. However, referrals persisted after the children were returned to their parents, and the Department responded by providing continued services, resources, and evaluations.

On September 3, 2009, the four children, ranging in age from eight years to three years, were once again declared to be in imminent danger due to the unsanitary conditions of their home. Upon arrival at the Doe home, a police officer noticed a strong odor of urine and other foul smells. Once inside, the officer discovered a screwdriver on the floor in one of the children's bedrooms near an exposed electrical outlet, knives on the floor of the residence, numerous toothbrushes scattered throughout the home, piles of unwashed clothes cluttering the floor, dirty dishes stacked throughout the kitchen, soiled diapers stuck to the bathroom tile, a pile of dirt in the kitchen, and urine and feces stains on the floor of the bathrooms and the children's bedrooms. The children's beds smelled strongly of urine and it appeared to the officer that the children had been urinating on the floors and walls of their bedrooms. Piles of garbage and plates of molding food were also found on the floor throughout the home, including in Jane and John's bedroom.

Jane and John were arrested, and the children were removed from the home and placed into the temporary custody of the Department. Prior to being placed in foster care, the children were interviewed and evaluated by Children At Risk Evaluation Services (CARES). During a medical examination, evaluators discovered that the children had physical injuries consistent with sexual abuse, including bruising, acute and chronic anal and genital changes, and genital cuts and burns. While in foster care, the children received medical care to treat their injuries and began attending individual therapy sessions with licensed therapists.

During an interview with police, Jane admitted that she would punish her children for wetting or soiling their beds by inserting toothbrushes and other objects into their genitals and/or anal areas. She also confessed that she would prick the children's genitals with sewing needles.

---

[1] At that time, Jane was pregnant with E.C., who was born in April 2006.

After further investigation, Jane was charged with five counts of injury to a child and five counts of sexual penetration with a foreign object.[2] Jane implicated John in the abuse of the children and accused him of separately molesting the children on multiple occasions but later recanted. In his interview with officers, John denied molesting his children or being aware of his wife's treatment of the children. However, based on the condition of the home, John was charged with four counts of injury to a child.[3]

A case plan for John was approved by the magistrate which set forth reasonable efforts for reunification or, alternatively, the termination of parental rights. The plan required John to obtain psychological and psychosexual evaluations, follow all recommendations of the evaluations, obtain a risk assessment, comply with all sentencing requirements involving his criminal charges, maintain a home environment free of health and safety violations, and obtain Department authorization prior to allowing any individuals to reside in his home.[4]

At a review hearing, the magistrate approved a permanency plan for the termination of parental rights. Subsequently, the state filed a petition seeking termination of Jane and John's parental rights. A trial was held on the state's petition, and the magistrate entered an order terminating Jane and John's parental rights. Jane and John appeal.

## II.

### STANDARD OF REVIEW

In an action to terminate parental rights, due process requires this Court to determine if the magistrate's decision was supported by substantial and competent evidence. *State v. Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 345-46, 144 P.3d at 599-600. This Court will indulge all reasonable inferences in support of the trial

---

[2] Jane eventually pled guilty to one count of forcible sexual penetration by use of a foreign object.

[3] John eventually pled guilty to two counts of misdemeanor injury to a child due to the unsafe, unsanitary, and inappropriate conditions of the home. The sentencing court ordered John to complete four years of probation and issued a no-contact order between John and his children during the period of probation.

[4] While a case plan for Jane was referred to in the guardian ad litem's termination report, only John's case plan is contained in the record on appeal.

court's judgment when reviewing an order that parental rights be terminated. *Doe v. Doe*, 148 Idaho 243, 246-47, 220 P.3d 1062, 1064-65 (2009). We conduct an independent review of the record that was before the magistrate. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id*. Idaho Code Section 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the state's petition for termination was based on two grounds. First, the state alleged that Jane and John neglected their children. Idaho Code Section 16-1602(25) defines, in part, a "neglected child" as:

> [One] who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; however, no child whose parent or guardian chooses for such child treatment by prayers through spiritual means alone in lieu of medical treatment shall be deemed for that reason alone to be neglected or lack parental care necessary for his health and well-being . . .

4

Second, the state's petition alleged:

> The children are victims of conduct or omission by the mother and the father resulting in bruising, scarring, burns and/or soft tissue swelling to the genitals and/or anal areas, and such condition is not justifiably explained or the history is at variance with the degree or type of conditions or circumstances indicate that such condition may not be the product of accidental occurrence.

As mentioned above, abuse is one of the factors for termination under I.C. § 16-2005. While the state did not specifically use the word "abuse" in describing the second ground for termination, the language used was essentially identical to the following definition of "abuse" under I.C. § 16-1602(1)(a):

> *Conduct or omission resulting in skin bruising*, bleeding, malnutrition, *burns*, fracture of any bone, subdural hematoma, *soft tissue swelling*, failure to thrive or death, and *such condition or death is not justifiably explained, or where the history given concerning such condition or death is at variance with the degree or type of such condition or death, or the circumstances indicate that such condition or death may not be the product of an accidental occurrence;* . . .

(Emphasis added).

The magistrate concluded that the state met its burden to show, by clear and convincing evidence, that the children were neglected. Specifically, the magistrate held that Jane and John failed to provide safe, sanitary, and appropriate living conditions for the children. In addition, the magistrate determined that the state established, by clear and convincing evidence, that Jane abused the children and John did not prevent such abuse.[5] Finally, the magistrate held that, due to such abuse and neglect and because the children required a stable living environment, termination was in the best interests of the children.

Based on the totality of the evidence presented at the trial on the state's petition to terminate Jane and John's parental rights, we conclude that there was substantial and competent evidence to support the magistrate's conclusion that Jane and John neglected their children. In addition, substantial and competent evidence supported the magistrate's finding that Jane abused the children and that John's failure to protect his children helped facilitate that abuse. The facts

---

[5] The magistrate also determined that the state did not specifically allege abuse as a ground for termination in its petition. However, as mentioned above, the language used by the state in describing its second ground for termination was almost identical to the definition of "abuse" under I.C. § 16-1602(1)(a). As such, the magistrate's conclusion that the state did not properly allege abuse as a ground for termination was in error.

5

of this case, as summarized above, were established by the testimony of numerous witnesses at trial. These witnesses included two police officers, a social worker, and the children's guardian ad litem. These witnesses were in agreement as to the unstable, unsafe, and unsanitary living conditions of the Doe home. Additionally, the witnesses were in agreement that Jane and John were either unwilling or unable to provide the extent of care and stability necessary for their children's well-being. A case plan was developed for John, but it does not appear that any action was taken on the case plan prior to termination. The evidence presented at trial demonstrated that neither parent was able to apply the years of training and services provided by the Department in order to provide their children with a safe, stable, and healthy environment.

Further, substantial and competent evidence supported the magistrate's conclusion that the termination was in the best interests of the children. John testified that, because of his status as a registered sex offender, he chose not to have physical contact with his children or aid in their care because of his concern that new allegations of abuse might be made. In addition, John testified that, should he retain his parental rights, he was concerned about his ability to obtain work due to his status as a registered sex offender. John also testified that it was not yet decided who would help care for the children should he obtain employment. Witnesses familiar with the children's progress testified that a stable living environment is vital to the children's well-being. Those witnesses testified that, during their time in foster care, the children were receiving treatment and care for their injuries and behavioral disorders, did not ask to visit or live with their parents, had improved hygiene and physical appearance, were improving in school, and seemed generally healthy and in good spirits.

The testimony in support of termination was uncontroverted with a few exceptions. Jane recanted her admission to police that she abused the children. However, the officers' testimony and evidence of the children's injuries sufficiently rebutted Jane's testimony. Jane also denied that the condition of the home was unsafe for her children. To the contrary, numerous witnesses, including John, testified that the condition of the home was hazardous and unsanitary. Finally, John denied ignoring his wife's abuse of the children. John admitted that the children had significant injuries as a result of abuse, but he struggled to explain or identify how such injuries occurred. John claimed that he did not notice the children's injuries or changes in the children's physical appearance or behavior because he avoided all physical contact with his children and

6

was not involved in their caretaking. John's testimony supported the magistrate's conclusion that John did nothing to prevent his children's abuse.

## IV.

## CONCLUSION

There was substantial and competent evidence to support the magistrate's conclusions that Jane and John neglected their children and that Jane abused the children and John did nothing to protect the children from such abuse. Further, substantial and competent evidence supported the magistrate's conclusion that the termination was in the best interests of the children. Accordingly, the magistrate's orders terminating Jane and John's parental rights to their children, S.C., B.C., M.C., and E.C are affirmed. Costs, but not attorney fees, are awarded to the respondent Department of Health and Welfare on appeal.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**