**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43546**

| | |
|---|---|
| IN THE INTEREST OF: DOE CHILDREN, Children Under the Age of Eighteen (18) Years. | ) ) ) |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) |
| Petitioner-Respondent, | ) ) ) |
| v. | ) ) |
| JANE DOE (2015-17), | ) ) ) |
| Respondent-Appellant. | ) ) ) |

2015 Unpublished Opinion No. 769

Filed: December 29, 2015

Stephen W. Kenyon, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Thomas Kershaw, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Timothy J. Williams, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Jane Doe appeals from the magistrate's judgment terminating her parental rights to five of her children on the grounds of neglect. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Jane Doe is the mother to S.O., A.O., C.O., J.C., and R.C. Jr. The children were fathered by two men: C.O. is the father to S.O, A.O., and C.O.; and R.C. is the father to J.C. and R.C. Jr.[1] Doe's history of child protection issues began in 1999. In 2010, Doe's three children with C.O.

---

[1] Doe and R.C. have a sixth child together, born in March 2015, who is not part of this action.

1

were placed in foster care for over a year because of an unstable home environment and Doe's use of methamphetamine.

In April 2013, a child protection action began as an expansion from a juvenile corrections action involving the oldest child, S.O. The juvenile court ordered the child protection case be opened because of S.O.'s poor school attendance, poor grades, and substance abuse. The Department of Health and Welfare (the Department) placed the children under protective supervision in Doe's home. At that time, Doe was pregnant with R.C. Jr., giving birth to him and a stillborn twin on May 23, 2013. At the time of the birth, both Doe and R.C. Jr. tested positive for methamphetamine. The Department took immediate legal custody of all five children based on Doe's methamphetamine use, lack of cooperation, and her expressed intent to move the children to Arizona despite having an open child protection case. The Department placed the children in foster care and has retained legal custody of all five children since that time.

A case plan was then created (the 2013 Case Plan) and the Department made continual efforts to reunify the children with Doe. In May 2014, the first permanency hearing was held. Instead of filing a petition for termination at that time, the Department opted to allow Doe an additional three months to continue making progress on the 2013 Case Plan. Then, in August 2014, because of Doe's progress, the Department placed all five children back in the home of Doe and R.C. on an extended home visit.

Unfortunately, the children were returned to foster care two months later, in October 2014, after both Doe and R.C. admitted to again using methamphetamine. Doe, being pregnant with her sixth child at the time, admitted to using drugs while pregnant. Doe and the children were given hair follicle tests and both Doe and the one-year-old child, R.C. Jr., tested positive for methamphetamine. The Department removed the children and then implemented an amended case plan (the 2014 Case Plan). The children have remained in foster care since that time.

On December 9, 2014, the Department filed a petition to terminate all of the parents' rights to all of the children on the grounds of neglect and best interests of the children. The termination trial was held in July 2015, twenty-six months after the Department took legal custody of the children. During the trial, the court heard testimony from numerous caseworkers, probation officers, R.C., Doe, and S.O.

Based on the evidence presented, it is undisputed that Doe made numerous efforts to comply with the tasks of her 2013 and 2014 Case Plans. She consistently attended visits with her children and complied with requests for numerous drug tests, the majority of which came back negative. She also took advantage of several counseling and parenting resources available to her. However, despite her efforts, at the time of the trial, Doe had not satisfied her case plan requirements. Doe did not secure permanent housing that would accommodate herself and her six children. Instead, she was living in a shared room within a rehabilitation house, and her history of housing demonstrated instability. Doe was also unable to demonstrate consistent employment. Although employed at the time of the trial, Doe's wages were insufficient to meet the financial needs of her family, and her employment history was intermittent. Testimony also revealed two drug-related probation violations and periods of incarceration occurring after the commencement of the present case. Further, Doe did not complete any drug treatment program following her most recent relapse.

Ultimately, the magistrate entered a judgment terminating the parental rights of C.O., R.C., and Doe as to all five children involved in the case. Doe timely appeals.

## II.

## ANALYSIS

In an action to terminate parental rights, due process requires this Court to determine if the magistrate's decision was supported by substantial and competent evidence. *In re Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. at 345-46, 144 P.3d at 599-600. This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). We conduct an independent review of the record that was before the magistrate. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2). Therefore, the

requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id.*

Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the magistrate terminated Doe's parental rights on the ground of neglect, I.C. § 16-2005(1)(b). Doe argues that this decision was not supported by clear and convincing evidence. Idaho Code § 16-2002(3) defines neglect as any conduct included in I.C. § 16-1602(28), as well as situations where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case, the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months, and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Idaho Code § 16-1602(28)(a) provides that a child is neglected when the child is "without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents . . . or their neglect or refusal to provide them." Here, the record supports the magistrate's conclusion that Doe neglected her children under both statutory definitions of neglect.

Regarding Doe's failure to provide proper parental care, the evidence before the magistrate showed that Doe has struggled with the same issues of drug abuse for years. *See In re Doe 2009-19*, 150 Idaho 201, 208-09, 245 P.3d 953, 960-61 (2010) (considering a parent's past circumstances and conduct as evidence of whether current changes would be long lasting). The record demonstrates that Doe has been involved in numerous drug-related child protection issues beginning as early as 1999, resulting in her children being removed from her care for more than a

year in 2010, and she admitted to using drugs during at least two pregnancies. Doe also admitted to using methamphetamine during the period that the children were in her custody for the extended home visit between August 2014 and October 2014. As a result of that drug use, one-year-old R.C. Jr. tested positive for methamphetamine. Doe's history of neglectful behavior demonstrates substantial and competent evidence that Doe failed to provide her children with proper parental care and control under I.C. § 16-1602(28)(a).

The record also supports the magistrate's conclusion that Doe neglected her children by failing to complete her case plans. At the time of the termination trial, Doe's children had been in the legal custody of the Department in excess of the required fifteen months. The Department first obtained legal custody in June 2013 and retained legal custody at the time of the trial in July 2015.[2] Doe argues that her completion of all of the tasks on the 2013 Case Plan demonstrates compliance with the 2014 Case Plan as the tasks on both were "substantially the same." However, the 2014 Case Plan was imposed after Doe's drug relapse, which resulted in the children being returned to foster care. Further, according to the various testimonies and Doe's own testimony, the record does not support finding that Doe satisfied the ongoing obligations of either case plan. Doe did not maintain stable and drug-free housing, did not remain drug free, did not demonstrate sustained financial stability, did not complete a parenting program, and did not comply with the terms of her probation. Thus, the magistrate's decision is supported by substantial and competent evidence of neglect on this basis as well.

Having established a sufficient statutory basis for termination, we next turn to whether termination of the parent-child relationship is in the best interests of the children. When determining whether termination is in a child's best interests, the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014).

The record supports the magistrate's finding that termination was in the best interests of the children. At the time of the termination trial, Doe was living in a shared room within

---

[2] We note, however, that the children were temporarily returned to Doe's custody on an extended home visit in August 2014, but they were removed again after only two months.

rehabilitation housing. Although testimony suggested that Doe would be eligible for family housing if she regained custody of her children, Doe did not have adequate housing immediately available for herself and her six children. The record also showed periods of unemployment and Doe admitted to being unable to provide financially for her large family without additional government assistance. The record also reveals a history of unstable home life due to Doe's illegal drug use. The children have been removed from Doe's care on three separate occasions, spending a considerable amount of time in foster care each time.

Moreover, there is substantial evidence in the record that the children are improving in foster care, where they are able to remain together. The school-aged children, S.O., A.O., and C.O., have shown improvements in their grades and school attendance. All of the children have been able to receive needed medical care. Additionally, the foster parents have consistently encouraged Doe's continued involvement in the children's lives.

Even though Doe has made efforts to improve her situation since her last relapse, she is still unable to offer permanency and stability to her children. Because there is substantial and competent evidence to support the statutory grounds for termination and to support finding that parental termination is in the best interests of the children, the magistrate did not err by terminating Doe's parental rights.

### III.
### CONCLUSION

There was substantial and competent evidence in the record supporting the magistrate's decision to terminate Doe's parental rights. Therefore, the magistrate's judgment terminating parental rights is affirmed.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.