IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 44179

| | | |
|---|---|---|
| In the Matter of JANE DOE, A Child Under the Age of Eighteen Years. | ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) | 2016 Unpublished Opinion No. 651 |
| | ) | |
| | ) | Filed: August 22, 2016 |
| Petitioner-Respondent, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| JANE DOE I (2016-19), | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Respondent-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GUARDIAN AD LITEM/CASA, | ) | |
| | ) | |
| Intervenor. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Angela Lynne Krogh, Magistrate.

Judgment terminating parental rights, affirmed.

Michael J. Nelson, Nampa, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Alana P. Minton, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Jane Doe appeals from the magistrate's order terminating her parental rights. Specifically, Doe contends the magistrate's findings of neglect and inability to parent are not supported by the evidence. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe is the mother to ten children. This child protection case involves only one of those children, A.B., born in February 2014. In August 2014, police declared A.B. to be in imminent danger after Doe was reported to be suicidal and acting irrationally. A.B. was then placed in the protective custody of the Department of Health and Welfare (the Department). At the time of A.B.'s removal from Doe's care, A.B. was in a low percentile for her weight, near the 10th percentile, despite having been born at a healthy birth weight of eight pounds and four ounces. Within four months of being placed in protective care, A.B. gained substantial weight, increasing to the 40th percentile for weight. By the time A.B. was one year of age, her weight was in the 70th percentile.

After fifteen months without successful reunification, the Department filed a petition for parental termination. The court bifurcated the termination trials of Doe and A.B.'s father. At Doe's trial on the termination petition, the Department presented evidence regarding Doe's long history of mental illness and current mental health diagnoses. The court also heard evidence that Doe has been involved in numerous other child protection actions resulting in the termination of her parental rights to eight of her other children. Multiple witnesses testified as to Doe's erratic behavior during various supervised visits with A.B., Doe's failure to progress to having unsupervised visits with A.B., and Doe's demonstration of poor attachment toward A.B. during those visits. Multiple witnesses also testified as to the extensive services that have been offered to and utilized by Doe during this and other child protection proceedings. Despite Doe's access to and utilization of these services, these witnesses attested to Doe's failure to improve her parenting abilities to the point where her children could safely remain in her care.

In her defense, Doe acknowledged that she has had issues with her mental health since the 1990s, but testified that her mental health issues do not affect her ability to parent. Her current therapist testified that while working with Doe, he saw improvements in her mental health, but also stated that he had never observed her with any of her children.

At the conclusion of the trial, the magistrate found that termination of Doe's parental rights was in A.B.'s best interests on the grounds of neglect and Doe's inability to discharge her

parental responsibilities for a prolonged period of time that was likely to be injurious to A.B. Doe timely appeals.[1]

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. Idaho Code § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's

---

[1]     The father does not appeal the termination of his parental rights.

decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Here, the magistrate terminated Doe's parental rights on the basis of neglect and on the basis that Doe is unable to discharge parental responsibilities for a prolonged period that will be injurious to A.B.'s health and well-being. On appeal, Doe contends that neither finding by the magistrate is supported by substantial and competent evidence. We address each finding in turn.

## A.      Neglect

Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

Doe contends the finding of neglect is not supported by substantial and competent evidence because there was no evidence presented at trial from a medical professional regarding A.B.'s health, and there was no evidence presented that A.B.'s low weight percentile was caused by Doe's failure to feed the child. Doe's contentions ignore the significance of the evidence that was presented at trial as well as the reasonable inferences the court permissibly drew from that evidence.

The magistrate determined that Doe neglected A.B. by failing to feed her over a significant period of time. The court based its finding on evidence that, despite being born at a healthy weight of eight pounds and four ounces, by the time A.B. was six months old, she was in a low percentile for her weight. Then, after being removed from Doe's care and placed in foster care, A.B.'s weight increased to the 40th percentile within four months and continued increasing

4

until reaching the 70th percentile, where it remained through the time of trial. The court considered that because A.B. had no medical or developmental issues to account for such low weight, the evidence supported an inference that A.B.'s low weight was "due to a simple failure to feed the child." The court reasoned that because failure to feed a child constitutes a fundamental failure to meet a child's basic needs, the Department met its burden of showing neglect by clear and convincing evidence.

Idaho courts have consistently held that it is the province of the trial court to assess the credibility of witnesses, assign weight to their testimony, and draw reasonable inferences from the evidence. *In re Doe*, 157 Idaho 955, 958, 342 P.3d 667, 670 (2015). The test for reviewing inferences drawn by the trial court is whether the record reasonably supports the inferences. *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 361, 93 P.3d 685, 692 (2004). Here, the magistrate's inference that Doe's feeding of A.B. was insufficient to maintain a healthy weight is supported by the record. A.B. was born at a healthy weight. By the time she was six months of age, she was significantly underweight. After being removed from Doe's care and placed into foster care, A.B. gained substantial weight, ultimately reaching the 70th percentile for her age. Notably absent from the record is any plausible alternative explanation as to why A.B.'s weight dropped so significantly between the time of her birth and six months of age. Also absent is any explanation as to why A.B.'s significant weight gain was immediate upon being placed into foster care. It was reasonable for the magistrate to infer that, absent any other condition or explanation, A.B.'s significant weight loss was caused by insufficient feeding, which was subsequently remedied upon her placement into foster care, as evidenced by her immediate weight gain. Thus, the evidence in the record supports the magistrate's finding that Doe neglected A.B. by failing to provide proper care necessary for A.B.'s well-being.

Relatedly, Doe contends the magistrate's finding of neglect was unsupported by evidence because there was no testimony that A.B.'s low weight was negatively impacting her health. However, nothing in the statutory definition of neglect requires a child to suffer demonstrable harm before the parent-child relationship can be terminated on the grounds of neglect. *Doe v. Roe*, 133 Idaho 805, 808, 992 P.3d 1205, 1208 (1999). Thus, the Department was not required to show that A.B.'s underweight condition was detrimental to her health before the court could find neglect.

Based on the record before this Court, we conclude that there is substantial and competent evidence to support the magistrate's finding of neglect.

**B.      Inability to Parent**

Doe next contends there is not substantial and competent evidence to support the magistrate's finding that Doe is presently unable to discharge her parental responsibilities. Specifically, she argues the magistrate erred in relying on testimonial evidence from an expert witness who never met with Doe, but instead relied upon old mental health evaluations and reports to form his opinion on Doe's inability to parent. Relatedly, Doe argues the magistrate did not place sufficient weight on testimony from Doe's current mental health provider, who testified that Doe is presently capable of parenting A.B.

First, as to Doe's contention that it was error for the magistrate to consider the testimony of an expert that never met with Doe, this argument is not supported by any authority and is waived. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) ("A party waives an issue cited on appeal if either authority or argument is lacking."). However, even if we consider the issue as not being waived, the argument contradicts evidentiary rules. An expert may form an opinion based upon any facts or data available in a case. Idaho Rule of Evidence 703. Here, in forming his opinion, the expert relied on Doe's extensive mental health records. Thus, we cannot say it was error for the magistrate to consider the expert's testimony simply because he never met personally with Doe.

Next, to the extent the magistrate may have assigned more weight to one expert over another, Idaho courts have repeatedly held that, on appeal, the appellate court does not reweigh the evidence that was considered by the magistrate. *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). "It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *Doe*, 157 Idaho at 958, 342 P.3d at 670. In this regard, it was the province of the magistrate to assess the credibility of the witnesses and assign weight to their testimony regarding their opinions on Doe's parenting ability.

Moreover, to the extent that Doe contends the magistrate's findings are based predominantly on the opinions of one mental health professional over those of another, Doe misconstrues the basis of the court's findings. In announcing its findings, the magistrate referenced numerous sources of evidence put forth both by the Department and by Doe. This

6

included reports and testimony pertaining to Doe's current mental health disorders, prior mental health diagnoses and treatments, concerns of suicidal threats, and her lack of improvement in demonstrating adequate parenting skills despite her extensive access to mental health and family services. Notably, the record demonstrates that the court placed considerable weight on the Department's evidence that Doe's parental rights to eight of her ten children had already been terminated. It is well-settled that a magistrate may consider a parent's past conduct in determining whether the parent will be a neglectful parent in the future. *In re Dayley*, 112 Idaho 522, 525, 733 P.2d 743, 746 (1987). In regard to evidence of the prior terminations, the court found this evidence showed "a persistent mental health disorder . . . [and] the persistent effect of that disorder on [Doe's] ability to parent." The court ultimately opined:

> Despite extensive services, [Doe's] mental health disorder and the impact of that disorder on her parenting persist and persist to the point that she is not able to parent [A.B.] and there's no reason to believe that there will be a sufficiently--a sufficient improvement in her skills in a reasonably foreseeable future time for the child to be returned to her care without State intervention.

Based on the record in this case, which demonstrates a long-standing history of mental illness and demonstrated inability to parent previous children, there is substantial and competent evidence to support the magistrate's finding that Doe is unable to discharge her parental responsibilities for a prolonged period that will be injurious to A.B.'s health and well-being. Therefore, the magistrate did not err in terminating Doe's parental rights to A.B. on these grounds.

### III.

### CONCLUSION

There is substantial and competent evidence in the record to support the magistrate's decision to terminate Doe's parental rights on the grounds of neglect and on the separate grounds of her inability to discharge parental responsibilities for a prolonged period of time. Accordingly, we affirm the magistrate's judgment terminating Doe's parental rights.

Judge GRATTON and Judge HUSKEY **CONCUR**.

7