**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48226**

|  |  |  |
|---|---|---|
| In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: October 16, 2020 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| JANE DOE (2020-31), | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Bryan K. Murray, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

David Martinez, Bannock County Public Defender; Scott A. Pearson, Deputy Public Defender, Pocatello, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Madison N. Miles, Deputy Attorney General, Pocatello, for respondent.

LORELLO, Judge

Jane Doe (2020-31) appeals from the judgment terminating her parental rights, contending there was insufficient evidence of neglect. We affirm.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe is the mother[1] of the minor child in this action, who was born in 2008. The Idaho Department of Health and Welfare received a referral concerning Doe's mental fitness and the cleanliness of her home. The Department conducted a safety assessment of Doe's home, finding the floor covered with discarded food packaging and a broken lamp. After Doe claimed to have been in direct contact with the President of the United States and admitted spending money she anticipated receiving from the President for reporting undocumented immigrants, the safety assessor became concerned with Doe's mental health and financial stability. The safety assessor informed Doe that he would return in a week or two and that, in the meantime, Doe needed to keep a pre-existing appointment with a mental health specialist for a psychological evaluation. When the safety assessor returned, the home remained unsanitary and Doe had cancelled the psychological evaluation.

Soon thereafter, Doe was hospitalized pursuant to an involuntary commitment due to her deteriorating mental health, and custody of the child was transferred to the Department. Doe remained hospitalized for the next six months. During that time, two of Doe's siblings obtained a guardianship over Doe, which remained in place through the conclusion of the termination proceeding. After Doe's release from the hospital, the magistrate court approved a case plan for her and conducted several review hearings while the child was in the Department's custody. Ultimately, the Department petitioned to terminate Doe's parental rights. The magistrate court terminated Doe's parental rights after finding clear and convincing evidence that she had neglected the child and that termination is in the child's best interests. Doe appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243,

---

[1] Doe is not the child's biological mother. During the termination hearing, Doe testified that she adopted the child as an infant. Nothing in the record indicates that the child has an adoptive father.

245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe argues that there was insufficient evidence to support the magistrate court's neglect finding. The Department responds that substantial, competent evidence supports the magistrate court's termination decision. We affirm the magistrate court's termination decision.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Doe does not challenge the magistrate court's finding that termination is in the child's best interests. Thus, our task is limited to determining whether there is sufficient evidence supporting the statutory basis for termination. The magistrate court found, by clear and convincing evidence,

3

that the statutory basis for termination was neglect. Idaho Code Section 16-1602(31)(a) provides that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for the child's well-being because of the conduct or omission of his or her parents, or their neglect or refusal to provide them. Neglect also includes situations where the parent has failed to comply with the court's orders or the case plan in a child protection case, the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months, and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found that Doe suffers from severe mental health issues that render her incapable of comprehending the child's needs, depriving the child of proper parental care and support. The Department instituted the underlying child protection action in response to Doe suffering a severe psychotic break. Doe's first caseworker testified that Doe claimed to be in contact with the President and that he would pay her for reporting undocumented immigrants. This delusion resulted in Doe accusing relatives and community members, including employees of the child's school, of being undocumented immigrants and Doe's eventual commitment to a state hospital for mental health treatment. Doe herself testified about her hospitalization for the first six months of the child protection action. Despite this lengthy hospitalization, Doe claimed that she did not understand why she was hospitalized and stated her belief that the hospitalization was unnecessary. Doe did, however, admit to a previous diagnosis of depression, taking medications prescribed by the hospital, and attending counseling. Doe's second caseworker testified that Doe's psychiatric medications left her "emotionally flat," such that she would exhibit little reaction to receiving good or bad news. Doe's mental health issues, including a diagnosis of major depression, were apparently so severe that her siblings obtained guardianship over her.

There is substantial evidence in the record demonstrating the negative effect Doe's mental illness had on her parenting ability. Doe's first caseworker testified to admissions from Doe that she depended on members of her church for support. According to Doe, members of her church cleaned her home on more than one occasion. The guardian ad litem testified that Doe is also dependent upon her family for some of her needs. Doe herself testified that, prior to being hospitalized, her home was so unsanitary it was unsafe for the child.

4

Regarding the direct effects of Doe's parenting (or lack thereof) on the child, Doe's second caseworker testified that the child suffered from developmental delays upon entering the Department's custody. Despite being in fifth grade when removed from Doe's care, the child read at a second-grade level and was in need of speech therapy. Even some simple tasks were beyond the child's capability. For example, one of the child's foster parents testified that the child could not count money or recall her own birthday. However, that same foster parent testified that, while in her care, the child made significant improvements in a matter of weeks in her ability to identify different denominations of coins and bills, her confidence when reading aloud, and her general ability to remember information. Doe's second caseworker testified that, despite expressing interest in the child's education, Doe was unwilling or unable to motivate the child to complete school assignments during visitations. Instead, Doe would allow the child to play with electronic devices. Additionally, Doe testified that she was unaware of the child's need for speech therapy prior to her removal.

Doe contends that the magistrate court erred because she has not manifested a prolific inability to provide for the child. Doe asserts that, since being released from the hospital, she has lived alone; maintained a clean, stable home; provided for her own daily needs; participated in counseling and medication management; visited the child; and took a sincere interest in the child's well-being. However, the magistrate court found that Doe would require round-the-clock supervision to safely parent the child. Of particular concern was Doe's admission to lacking a plan to protect the child should Doe suffer another psychotic break. Additionally, although Doe showed interest in the child's education and well-being, her caseworkers testified that Doe would not follow through on this professed interest. Doe's second caseworker further testified that Doe failed to improve her parenting and did not progress beyond supervised visits, which the child resisted attending, throughout the child protection action.

Finally, there is Doe's guardianship. Doe admitted that her siblings are her co-guardians, but disclaimed any understanding why the guardianship was put in place and displayed little understanding of how it functioned. Moreover, other than seeking a means to take her brother's name off the title to her residence, Doe did not testify to any efforts she made to dissolve the guardianship--a required task in Doe's case plan. As the magistrate court observed, Doe cannot be a fit parent for the child when Doe cannot care for herself. The above-described evidence

5

sufficiently supports the magistrate court's finding that Doe neglected the child. Consequently, Doe's challenge to the sufficiency of the evidence supporting the neglect finding fails.

## IV.

## CONCLUSION

There was substantial, competent evidence to support the magistrate court's finding that Doe neglected the child. Thus, Doe has failed to show error in the magistrate court's termination decision. Accordingly, the magistrate court's judgment terminating Doe's parental rights is affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.