**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45033**

|  |  |  |
|---|---|---|
| In the Interest of: JANE DOE I, A Child Under Eighteen (18) Years of Age. | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) | 2017 Unpublished Opinion No. 526 |
| | ) | Filed: July 26, 2017 |
| Petitioner-Respondent, | ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| JANE DOE (2017-17), | ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cathleen M. Irby, Magistrate.

Judgment terminating parental rights, affirmed.

The Law Office of Theresa A. Martin; Theresa A. Martin, Meridian, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Denise M. Hippach, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Jane Doe appeals from the magistrate's judgment terminating her parental rights. Doe argues that the magistrate either ignored or did not consider relevant evidence of Doe's conduct. Alternatively, Doe argues there was not substantial and competent evidence to support the magistrate's findings that: (1) Doe neglected her child; and (2) it was in the child's best interest to terminate Doe's parental rights. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the mother of K.B. In March 2015, a social worker from the Idaho Department of Health and Welfare (Department) went to Doe's home after receiving a referral with concerns

that: (1) K.B. had not been to daycare; (2) Doe had not been to work for over a week; and (3) Doe was possibly using drugs. The social worker found little to no food in the home. Doe reported that she and K.B. had been living in hotels due to multiple fights with her boyfriend,[1] who is a registered sex-offender. With the assistance of the Department, Doe developed a safety plan where she would sign up for food stamps and WIC and Doe and K.B. would move into City Light Shelter Home. On April 3, 2015, Doe's boyfriend was arrested for domestic assault against Doe in the presence of a child, K.B. During the domestic violence investigation, Doe reported to law enforcement that she had smoked methamphetamine that day and she voluntarily handed the police a methamphetamine pipe. A no-contact order was issued between Doe and her boyfriend, with Doe as the protected party.

On April 10, 2015, a new referral was made to the Department with concerns that there was still no food in Doe's home. On April 13, 2015, a social worker responded to Doe's home and found it empty. Neighbors reported that Doe, her boyfriend, and K.B. had moved out on April 12, 2015. The Department learned Doe was living at a hotel and when law enforcement conducted a welfare check, they discovered Doe's boyfriend in the hotel room with K.B.

As of April 16, 2015, Doe was not utilizing resources such as food stamps or WIC. The Department sought an order to remove K.B. from Doe's care due to the lack of food in the home and concerns with Doe's mental health, substance abuse, and ability to be protective. An order to remove K.B. was issued April 20, 2015.

In June 2015, as part of the child protection case, Doe was ordered to participate in a case plan. The primary objectives of the case plan for Doe were to: (1) set aside her own needs in favor of the needs of K.B.; and (2) demonstrate that mental health and substance abuse did not impact Doe's ability to parent or meet K.B.'s emotional needs. To meet these objectives, Doe was required to: (1) obtain and maintain a safe and stable home environment; (2) attend K.B.'s appointments; (3) participate in a protective parenting class; (4) sign all necessary releases of information; (5) complete a mental health assessment; and (6) participate in substance abuse screening and random urinalyses.

---

[1] The man with whom Doe was having a relationship was her boyfriend. During the pendency of the case, Doe married and then divorced the man. For ease of reference, he will be called boyfriend.

On September 13, 2016, the Department petitioned for termination of Doe's parental rights asserting termination was in the K.B.'s best interest because: (1) Doe failed to comply with the case plan, the Department had temporary or legal custody of the child for fifteen of the most recent twenty-two months, and reunification had not been accomplished by the last day of the fifteenth month in which K.B. had been in the temporary or legal custody of the Department; (2) Doe neglected K.B. because Doe failed to demonstrate the ability to maintain a stable home environment wherein she could meet all of the K.B.'s needs; and (3) Doe demonstrated a serious lack of protective capacity over the child along with a pattern of not placing K.B.'s needs above her own.

At the termination hearing in February 2017, the magistrate heard testimony from the social worker, the protective parenting class instructor, the probation officer, the foster mother, the guardian ad litem, the case manager, and Doe. Based on the testimony presented, the magistrate found Doe failed to demonstrate a commitment to completing the case plan, failed to establish and maintain stable housing, failed to demonstrate protective parenting skills, and failed to eliminate the pattern of placing her own needs over the child's. The magistrate explained: "[Doe] could not maintain stable housing during this case because of her own choices that made her life chaotic." The magistrate recognized that although Doe wrote a safety plan, Doe did not follow it. The magistrate took issue with Doe's continued relationship with her boyfriend, and explained: "[Doe] has been deceptive about this relationship throughout this case, choosing to protect [her boyfriend] and/or this relationship over her responsibilities to protect [K.B.]." The magistrate found termination of Doe's parental rights was in K.B.'s best interest. Doe timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho

383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.
## ANALYSIS

4

Doe argues the magistrate ignored, or did not address, relevant evidence regarding Doe's conduct when it found Doe neglected K.B. and therefore, should not have terminated Doe's parental rights. Alternatively, Doe argues the magistrate lacked substantial and competent evidence to find that Doe neglected the child. The State disagrees, arguing the magistrate made no errors and there was substantial and competent evidence to support the magistrate's decision in finding neglect and that termination of Doe's parental rights was in the best interest of K.B.

To meet the objectives of her case plan, Doe was required to: (1) obtain and maintain a safe and stable home environment; (2) attend K.B.'s appointments; (3) participate in a protective parenting class; (4) sign all necessary releases of information; (5) complete a mental health assessment; and (6) participate in substance abuse screening and random urinalyses. The magistrate found Doe had successfully completed the second, fourth, and fifth requirements, but failed to successfully complete the first and third requirements. The court also noted that while Doe had completed the sixth requirement, the court had on-going concerns about the scope of Doe's substance abuse and the potential untreated nature of the abuse.

Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(31), as well as situations where the parent has failed to comply with the court's orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

On appeal, The magistrate found by clear and convincing evidence that Doe neglected her child because: (1) Doe failed to provide a safe and stable home environment; and (2) Doe lacked protective capacity over the child and engaged in a pattern of not placing the child's needs above her own.

A.     The Magistrate Did Not Err in Finding Doe Neglected Her Minor Child

As a preliminary matter, although Doe claims the magistrate either ignored or did not consider specific evidence, she does not articulate what evidence was not considered. Moreover,

5

a review of the record in the case reveals the magistrate considered all of the evidence in the case and made both factual findings and legal conclusions on the issues which Doe claims are errors. The magistrate specifically made factual findings regarding Doe's testimony but still found Doe neglected K.B. and that termination of Doe's parental rights would be in the best interest of K.B. Because the magistrate considered all the evidence, and because there is competent and substantial evidence to support the magistrate's findings, we affirm the magistrate's findings.

**1.      Doe did not provide a safe and stable home environment for K.B.**

The State presented evidence that by the time of the termination hearing in February 2017, the child had been in the continuous custody of the Department for fifteen of the last twenty-two months, meeting the time limit set forth in I.C. § 16-2002(3)(b).

At trial, Doe reported that she had obtained employment, attended appointments for K.B., and participated and completed approved protective parenting classes. Doe stated she obtained stable housing because she recently moved into a home that had been previously approved by the Department. Doe did not contact the Department before her recent move nor did Doe conduct a background check for the other individual living in the home as she had agreed to do pursuant to her parenting plan. Still, Doe testified she did not think the resident at the new home would have an issue passing a background check. Doe testified that if her new residence was not approved, she planned to move back to a residence that had been previously approved.

The case manager assigned to Doe's case testified that Doe was not compliant with the case plan requirement that Doe maintain safe and stable housing because Doe reported five different residences during the pendency of the case. Further, Doe's current residence was not approved by the Department as safe housing for K.B. because the other person living in the residence was not approved by the Department. The guardian ad litem assigned to Doe's case testified that during this case, she knew of six different addresses for Doe, demonstrating Doe's inability to maintain a stable home.

The magistrate considered Doe's testimony that she felt she had accomplished the task of maintaining a safe, stable home environment. In the court's findings of fact, the magistrate found Doe's testimony mirrored that of the other witnesses--that Doe had lived in at least five residences, one of which was with a registered sex-offender; that some of the time she "couch surfed"; and some of the time she was incarcerated. Doe admitted she had been unable to

6

consistently pay for her own housing and that at other times, she could not meet her financial obligations, including basic living expenses.

In finding that Doe had failed to maintain a safe and stable home, the magistrate recognized there were periods of time during the pendency of the case where it appeared Doe's housing was somewhat stable. The court found Doe's "act now-explain later" attitude troubling. The court noted that Doe should have ensured that the new residence was safe and approved by the Department before moving in, instead of assuming everything would work out once she moved. This lack of forethought indicated Doe's inability to put K.B.'s needs above Doe's own in terms of finding housing. The court's finding that Doe failed to provide a safe and stable home environment is supported by substantial and competent evidence.

2.      **Doe lacked protective capacity over the child and engaged in a pattern of not placing the child's needs above her own**

One reason Doe was required to participate in a protective parenting class was due to her relationship with a registered sex-offender. At the case initiation, the man was a boyfriend. Doe testified she was aware of the Department's concern about her relationship with the man that she initially dated, then married, then divorced, then continued to maintain regular contact, but Doe did not agree with the Department's concerns and did not believe the man was a pedophile. Doe did not disclose the marriage to her boyfriend to the Department because Doe knew the Department would not approve of her decision. Doe also testified she recently divorced her boyfriend, but admitted to giving him money and contacting him by phone and email while he was in jail. Although Doe had continued to maintain contact with her boyfriend after the divorce, Doe testified she would not continue a relationship with him.

The case manager testified that although Doe participated and completed the protective parenting program, Doe did not demonstrate an increase in protective capacities sufficient to warrant returning K.B. to Doe's care. Although Doe's safety plan contained a provision that required Doe to have a safe relationship with men, the case manager testified Doe was violating the terms of her safety plan by maintain her relationship with the boyfriend. The case manager was aware that Doe continued to have contact with her boyfriend even though they were recently divorced. The case manager reported that Doe was given the tools to be a more protective parent, yet Doe still lacked the necessary insight about the types of people or situations that would require Doe to be more protective.

Doe's protective parenting class instructor testified that Doe completed the program in June 2016. Although Doe demonstrated a solid understanding of the material, the instructor had lingering concerns that Doe would not apply the learned material or use the safety plan when necessary. The instructor explained that although Doe may have had the best of intentions to complete the case plan, Doe's resistance to actually engaging in the learning process to complete the tasks demonstrated her continued inability to be accountable for her own problems, which prevented Doe from adequately addressing them. For example, the instructor acknowledged that Doe seeking a divorce from her boyfriend was being protective of the child. However, the instructor explained that if Doe continued to have contact with the boyfriend (as she was doing), it would indicate Doe was choosing her relationship with her boyfriend over reunification with her child.

The guardian ad litem testified she was concerned about the nature of Doe's ongoing relationship with her boyfriend, because of the domestic violence between Doe and her boyfriend and the fact that he is a registered sex-offender. Although at the time of the termination hearing, Doe had recently divorced her boyfriend, the guardian ad litem believed they were still in a relationship. The social worker assigned to Doe's case also testified that Doe lacked protective parenting capacities because of Doe's ongoing relationship with her boyfriend. Doe's probation officer testified in January 2017 that she saw Doe's phone number on her boyfriend's call log at the Ada County Jail. When the probation officer listened to that recorded call, she heard a male and a female voice.

The magistrate found that although Doe had completed the classes, Doe failed to increase her protective parenting capacities, which was the reason for the classes. The court found that although Doe had written a safety plan, she was not following it. She divorced her boyfriend that she had married, but continued to have a relationship with him despite the fact that he was violent, a registered sex-offender, and the on-going relationship potentially jeopardized Doe's reunification with K.B. Based on all the testimony, including Doe's, the magistrate found that she did not believe Doe would protect K.B. from unsafe relationships and environments. The court's finding is supported by substantial and competent evidence.

3. **The magistrate found that although Doe completed a substance abuse evaluation and the recommendations, Doe was deceptive about the scope of her substance abuse problem**

The court found that Doe completed both the substance abuse evaluation and the recommended substance abuse treatment. However, the court also noted that Doe later admitted to using methamphetamine, was arrested for a possession of a controlled substance charge, failed to undergo drug tests as requested by her probation officer, and lied to her probation officer about complying with drug tests. The court found that "[Doe's] pattern of deception concerning her substance abuse issues leaves this court with concerns that the severity of her substance abuse issues is unclear, not adequately treated, and that her [child] remain at risk in her care." This finding is supported by substantial and competent evidence.

In light of all the evidence presented, including what Doe was able to complete, the court's finding that Doe neglected her minor child by failing to provide a safe and stable home, and by failing to increase her protective parenting capacities is supported by substantial and competent evidence.

**B.    The Court Did Not Err in Finding Terminating Doe's Parental Rights Were in the Best Interest of the Child**

Doe argues the magistrate erred in concluding termination was in the best interest of the child for two reasons. First, Doe contends the magistrate failed to consider Doe's testimony that it was not in her child's best interest for Doe's parental rights to be terminated. Second, Doe asserts there was not substantial and competent evidence to support the magistrate's finding that termination of Doe's parental rights was in the best interest of the child.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interest of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interest, the trial court may consider: the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014); *see Doe v. Roe*, 133 Idaho 805, 809-10, 992 P.2d 1205, 1209-10; *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). A finding that it is in the best interest of the child to terminate parental rights must still be made upon objective grounds, supported by

substantial and competent evidence. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

In finding that termination was in the child's best interest, the magistrate focused primarily on Doe's inability to safely and consistently parent the child. Doe's case manager testified that over the last twenty-two months, Doe failed to adequately address the issues that caused the child to be removed from Doe's care, demonstrated a pattern of continually placing her own interests over the child's, and failed to demonstrate her ability to be a full-time parent to the child. The case manager stated that while in foster care, the child made significant improvements in the areas for which she initially demonstrated serious developmental delays.

The court-appointed guardian ad litem testified Doe would not be a safe and protective mother to the child. The guardian ad litem testified that although Doe ended the legal relationship with her boyfriend, Doe failed to demonstrate an understanding of the risks to the child that were present when Doe was involved in that relationship. In addition to the testimony of the case manager and the guardian ad litem, the magistrate also considered the potential that Doe could serve up to 137 days in jail for a second probation violation. The magistrate found that although Doe divorced her boyfriend, she maintained contact with him, which showed the relationship was more important to Doe than being reunified with the child. Further, the magistrate recognized that while Doe had employment, her current residence was not approved by the Department. Ultimately, the magistrate concluded that K.P. deserved the permanency that an adoptive home would provide.

Doe asserts that K.P. was bonded to her and the case manager also testified that Doe and K.P. appeared to have a bond. However, the evidence before the magistrate reflected that after two years, the magistrate was still concerned that Doe was unable to safely and consistently parent her child. Although Doe testified she was sober and would be protective of K.P., the magistrate found Doe's testimony to be deceptive, manipulative, and disingenuous.

Moreover, K.B. had made significant improvements while in foster care. When K.B. arrived at foster care, her language skills were significantly delayed, she had behavioral outbursts and, demonstrated little, if any, social boundaries with men. At the time of her termination hearing, K.B.'s speech had improved to the level that she could put together short sentences, she was no longer having behavioral outbursts, and the foster family was working on addressing her social behavior, which had improved. The testimony suggested that while K.B. had some bonds

to Doe, K.B. was not upset when her visits with Doe ended. K.B. had also demonstrated bonding behaviors with her foster parents. Thus, in light of the positive improvements K.B. made while in foster care and because of Doe's inability to safely parent K.B., we conclude that the magistrate's finding that termination was in the child's best interest is supported by substantial and competent evidence.

## IV.

## CONCLUSION

There is substantial and competent evidence in the record to support the magistrate's finding that Doe neglected K.B. and that termination is in the child's best interest. Accordingly, the magistrate's judgment terminating Doe's parental rights is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.

11