**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47643**

| | |
|---|---|
| In the Matter of: John Doe I, John Doe II, Jane Doe I, and John Doe III, Children Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) |
| Petitioner-Respondent, | ) ) |
| v. | ) ) |
| JANE DOE (2019-46), | ) ) |
| Respondent-Appellant. | ) ) ) |

Filed: April 6, 2020

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

---

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. Gaylen L. Box, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

James Law Office, PLLC; Joseph F. James, Gooding, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

Theodore R. Larsen, Jerome, guardian ad litem.

---

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the judgment terminating her parental rights. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother and Father are the biological parents of four minor children. The magistrate court terminated their parental rights to all the children under the Child Protective Act (CPA), Idaho

1

Code §§ 16-1601, *et seq.*[1] Termination occurred after a lengthy procedural history during which the court repeatedly ordered the children into the custody of the Department of Health and Welfare (Department). Initially, the court ordered the children into the Department's custody in 2010 before the fourth child was born. Following this order, the parents completed a court-approved case plan, and the children were returned to the parents' custody. Sometime thereafter, the parents separated, and a family law court awarded Father sole custody of the four children.

In August 2016, however, the Department filed a petition again seeking custody of the children, after the police found large amounts of marijuana and other illegal drugs in the hotel room where Father and the children were living. Upon Father's arrest, the police declared the children to be in imminent danger and placed them in shelter care. As a result, the magistrate court again ordered the children into the Department's custody and approved another case plan (2016 case plan) for Mother to complete. Under this 2016 case plan, Mother showed some progress, including maintaining a stable home, employment and a support system, although occasionally she tested positive for marijuana. Eventually, the court adopted the Department's recommendation and placed the children in Mother's home for an extended home visit and then in her care under the Department's protective supervision.

While the children were in Mother's care, however, the Department received reports that Mother was exhibiting erratic behavior, had been evasive with the children's guardian ad litem, had changed her phone number without notifying the Department, was not employed, and at one point had no electricity or running water in the home. Further, the children had excessive school absences and tardiness and had expressed fear for their physical safety.

Then, in May 2018, the Department received a report from the children's school and the police that one of the children had a "goose egg" on her forehead and that the child had explained the injury occurred when Mother had grabbed her and slammed her head against the floor, wall, and table. When confronted about the incident, Mother admitted that the children were not safe with her and that she had been smoking marijuana daily. As a result, the police again declared the children in imminent danger, and the magistrate court returned the children to the Department's custody.

---

[1] Father is presently serving a 355-month sentence in federal prison, and the termination of his parental rights is not at issue in this appeal.

In June 2018, the magistrate court adopted another case plan (2018 case plan) for Mother to complete. This 2018 case plan focused on Mother's mental health and substance abuse issues. The 2018 case plan required, among other things, that Mother participate in individual counseling; create mental health and self-care plans; obtain a psychological assessment and follow its recommendations; participate in medication management; participate in treatment for her marijuana use and in random drug tests; participate in a parenting class; ensure the children's medical, dental, educational, and other needs were met; ensure the children continue individual counseling; obtain legal custody of the children in family law court; maintain stable, sanitary, and drug-free housing; allow for Department home visits; and provide proof of income and a budget.

During review hearings on Mother's progress under the 2018 case plan, the Department routinely reported that Mother refused to perform the 2018 case plan tasks, and in January 2019, the Department filed a petition to terminate Mother's parental rights. The magistrate court, however, denied this petition, determining that compelling reasons existed to allow Mother to continue to perform the 2018 case plan. Thereafter, the Department continued to report Mother was still not performing the 2018 case plan tasks, and again in August 2019, the Department filed a petition to terminate Mother's parental rights.

In October 2019, the magistrate court held a termination hearing at which numerous witnesses testified. Following the hearing, the court issued findings of fact and conclusions of law terminating the Mother's parental rights. The court concluded Mother had neglected the children under I.C. § 16-2002(3)(a) by failing to provide proper parental care and control necessary for the children's well-being. Alternatively, the court concluded Mother had neglected the children under I.C. § 16-2002(3)(b) by failing to comply with the 2018 case plan while the Department had custody of the children for fifteen of the most recent twenty-two months. Further, the court concluded termination of Mother's parental rights is in the children's best interests. Mother timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States

Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.

### ANALYSIS

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or

4

(e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case; the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months; and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

On appeal, Mother does not challenge the magistrate court's conclusion that she neglected the children by failing to provide proper parental care necessary for the children's well-being and, alternatively, by failing to complete her 2018 case plan while the children were in the Department's custody for the requisite period of time. Rather, Mother only argues that substantial, competent evidence does not support the court's conclusion that termination of her parental rights is in the children's best interests.

5

The magistrate court made several findings supporting its conclusion that termination of Mother's parental rights is in the children's best interests. Mother, however, does not specifically challenge any of these findings. Rather, Mother provides a series of assertions in support of her claim that termination of her parental rights is not in the children's best interests. Mother's assertions include that she has "the ability to address her issues with a controlled substance," "has addressed her mental health issues," "has proved her ability to provide a home for her children," has "contributed to her children's financial care," and "has sufficient parenting skills to care for her children."

Contrary to Mother's assertions, however, the magistrate court found that Mother failed to complete substance abuse treatment and to comply with random drug testing, had "repeatedly tested positive for [drug] use," and "stated she should be able to continue to use [marijuana]." Further, the court found that Mother "has not had stable housing suitable for the children," "was evicted from the one home that might have been considered stable," and "has not provided support or necessities for the children." Regarding Mother's mental health, the court found that although treatment was recommended, Mother "did not follow through with treatment" and had not graduated from the domestic violence program in which she was to participate. Importantly, the court also found "the children's conditions improved while in their respective foster care and placement arrangements."

A review of the record establishes that the magistrate court's findings regarding the children's best interests are supported by clear and convincing evidence. Numerous witnesses testified about facts that support the court's findings. For example, the children's foster parents testified that Mother had not provided necessities for the children and that the children had improved while in foster care. Further, a Department's social worker assigned to Mother's 2018 case plan testified that he was unaware of Mother's residence since she had been evicted from her prior residence; Mother had failed to provide any proof she had completed or was undergoing mental health counseling at any time during the 2018 case plan's pendency; and Mother had not obtained an assessment of her drug abuse problem, had not been treated for that problem, and continued to use marijuana. Indeed, at the termination hearing, Mother did not deny repeatedly using marijuana and testing positive during the pendency of her case plans. Based on this and other evidence, we hold that clear and convincing evidence supports the

magistrate court's findings that termination of Mother's parental rights is in the children's best interests.

Also in support of her appeal, Mother argues that the children are "bonded and attached" to her and that she is likewise to them. The magistrate court specifically acknowledged that "[Mother] is bonded with . . . all of the children and loves them." As the Idaho Supreme Court has previously held, however, "a child may not live on parental affection alone." *State ex rel. Child v. Clouse*, 93 Idaho 893, 896, 477 P.2d 834, 837 (1970). In addition to love, affection and the satisfaction of their physical needs, children require moral guidance and training to allow them to grow into well-adjusted, normal adults. *Id.* The bond and attachment between Mother and the children does not overcome the court's conclusion, which is supported by substantial and competent evidence, that terminating Mother's parental rights is in the children's best interests.

## IV.

## CONCLUSION

The magistrate court's termination of Mother's parental rights is supported by clear and convincing evidence. Accordingly, we affirm the order terminating Mother's parental rights.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.