**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48310**

| | | |
|---|---|---|
| In the Interest of:  John Doe I, <br> a Child Under Eighteen (18) Years of Age. | ) <br> ) | |
| STATE OF IDAHO, DEPARTMENT OF <br> HEALTH AND WELFARE, | ) <br> ) | Filed:  December 10, 2020 |
| | ) | |
| Petitioner-Respondent, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| v. | ) <br> ) | THIS IS AN UNPUBLISHED <br> OPINION AND SHALL NOT |
| JOHN DOE (2020-38), | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Benjamin D. Harmer, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Tyler J. Rands, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

BRAILSFORD, Judge

John Doe (Father) appeals from the magistrate court's judgment terminating his parental rights.  We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Father is the biological father of John Doe I (the child).  The child was born in October 2018 with a serious heart defect.  Father and the child's mother (Mother) are both developmentally delayed.  At the time of the trial of the Idaho Department of Health and Welfare's petition to terminate their parental rights, Father and Mother were married and eighteen and twenty-two years old, respectively.

1

Sometime after the child's birth, Father, Mother, and the child began living in Father's parents' home. While they were living there, the Department received multiple reports regarding the home's poor condition and problems with the child's care. After the Department received a referral from the child's medical care provider that the child was failing to thrive, the child was placed in the Department's custody in April 2019, after an adjudicatory hearing. At that time, the child had life-threatening medical issues including a heart defect, a severely misshapen head, dependence on a feeding tube for nutrition, failure to gain weight, and failure to meet developmental milestones.

In May, the magistrate court approved a case plan for Father to perform. Among other things, the plan required Father to address his mental health issues; to complete a psychological evaluation and follow all recommendations; to participate in counseling and follow all recommendations; to complete a domestic violence/anger assessment, follow all recommendations, and participate in domestic violence counseling; to complete a parenting class and demonstrate the skills learned; to demonstrate his financial ability to provide for the child's needs; to obtain his high school diploma; to maintain safe, stable, sanitary, and drug-free housing for himself and the child; and to comply with the terms of his probation.

Based in part on Father's lack of progress on his case plan, the Department petitioned to terminate Father's and Mother's parental rights in February 2020. In August, the magistrate court conducted a trial on the Department's petition. At that trial, numerous witnesses testified including the individual who supervised Father's visits with the child, a Department child welfare supervisor, a Department social worker, the guardian ad litem, the child's foster mother, and the child's Mother. Father did not testify at the trial.

Following the trial, the magistrate court entered findings of fact and conclusions of law terminating both Father's and Mother's parental rights. The court concluded the Department had proven by clear and convincing evidence that Father severely neglected and abandoned the child; Father had not completed his case plan; the child had been in the Department's custody for fifteen of the most recent twenty-two months; and the termination of Father's parental rights is in the child's best interests. Father timely appeals from the judgment terminating his parental rights to the child.[1]

---

[1]     The magistrate court also terminated Mother's parental rights to the child, but she did not appeal.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006).

Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). "When deciding whether findings are clearly erroneous, [the appellate] Court does not substitute its view of the facts for that of the trial court. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of the witnesses." *In re Doe*, 152 Idaho 910, 913, 277 P.3d 357, 360 (2012) (citation omitted).

## III.

## ANALYSIS

**A.      Neglect**

Father challenges the sufficiency of evidence supporting the magistrate court's conclusion that he neglected and abandoned the child.  Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist:  (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period and such inability will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time.  Each statutory ground is an independent basis for termination.  *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31).  Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.  Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department.  I.C. § 16-2002(3)(b).

On appeal, Father claims the magistrate court concluded he neglected the child based on the child's "underlying medical conditions."  Based on this characterization of the court's ruling, Father argues there is no evidence that he "caused" the child's medical conditions; the child's "failure to thrive was [Father's] fault"; or the child would "revert and suffer medically" if he returned to Father's care.  Father's argument misconstrues the court's ruling.  The court actually concluded that Father neglected the child "because the child has not regularly received medically necessary and potentially life-saving treatment and care, including food."  Substantial and competent evidence supports the conclusion that Father neglected the child as defined by I.C. § 16-1602(31)(a), which includes the failure to provide subsistence and medical care

4

necessary for the child's well-being. *See* I.C. § 16-2002(3)(a) (providing for termination for neglect and adopting definition of "neglect" in I.C. § 16-1602(31)(a)).

This evidence includes, for example, the child's medical condition when the Department took custody of the child. At that time, the child was about five months old but only the size of a newborn infant. Likewise, the child was developmentally a newborn and could not hold up his head, reach for an object, or track with his eyes. Additionally, his head was severely misshapen and required him to wear a specially fitted, cranial helmet for twenty-three hours a day for about six months after the Department took custody of the child. The child has numerous other medical issues requiring specialized medical attention, some of which cannot be provided locally. Some of those issues will remain ongoing into the future including, for example, as he grows he will need additional heart surgeries to replace his heart valve.

Many of the child's serious medical and developmental issues were not addressed until after the Department took custody of the child. This delay in care is evidence that Father failed to appreciate and provide care for these issues. Further, even after the Department took custody of the child, Father continued to fail to appreciate the seriousness of the child's condition. For example, when visiting the child, Father repeatedly tried to remove the child's cranial helmet and tried to have the child ride on a hover board. Evidence of both the child's condition when the Department took custody of him and Father's ongoing failure to appreciate the seriousness of the child's condition is substantial and competent evidence supporting the magistrate court's conclusion that Father neglected the child under I.C. § 16-2005(1)(b) and as defined by I.C. § 16-1602(31)(a).

On appeal, Father also challenges the magistrate court's alternative conclusion that he neglected the child by failing to complete his case plan under I.C. § 16-2002(3)(b). Father concedes, however, that "there was not substantial progress made on the case plan." Regardless, Father contends that "he cared" and "wanted to complete his case plan" but that he did not understand the plan despite acknowledging it had been "explained over and over again" to him. Because Father claims he did not understand the plan, he contends he did not "willfully and responsibly" fail to comply with the plan, and as a result, substantial and competent evidence does not support the conclusion he failed to complete the plan. Father's argument fails for several reasons.

5

First, Father cites no authority in support of his proposition that a parent who is incapable of understanding a case plan should be excused from the requirement of complying with that plan. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Second, the Department repeatedly offered Father available services to assist him with the plan. For example, as the magistrate court found, the Department identified a provider "who could help with care coordination, transport to appointments, day planning, and basic life functioning" and also offered the assistance of "psychosocial rehabilitation workers and care coordinators." Father, however, declined or refused to accept this assistance. Third, as Father concedes, he failed to complete a substantial number of the plan's tasks. Although Father did obtain his high school diploma, the tasks Father failed to complete include, among other things, that he did not follow the recommended treatment from his psychological evaluation, did not attend any counseling, did not complete a parenting class, did not demonstrate the ability to parent, did not demonstrate the ability to financially support himself or the child, and did not maintain a stable home for himself and the child.

Regarding Father's failure to complete his case plan, he argues this Court should "consider his age and abilities" and that "his low income" is "likely the result of his learning difficulties and having just graduated from high school." This Court's review, however, is limited to whether substantial and competent evidence supports the magistrate court's decision. *See, e.g.*, *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65 (noting review is whether substantial and competent evidence supports decision). This Court will not reweigh the evidence. Moreover, the magistrate court considered that Father is young, immature and developmentally delayed, but Father cites no authority that these characteristics excuse a parent's inability to complete a case plan and to demonstrate appropriate parenting skills. *See, e.g.*, *Powell*, 130 Idaho at 128, 937 P.2d at 440 (noting party waives issue if authority is lacking). Accordingly, we conclude substantial and competent evidence supports the magistrate court's conclusion that Father neglected the child by failing to complete the case plan.[2]

---

[2]    The magistrate court also alternatively concluded Father abandoned the child. We do not need to address this alternative basis for terminating Father's parental rights because we conclude substantial and competent evidence supports the court's other conclusions that Father neglected the child. Regardless, we note that the Department did not allege abandonment as a basis to terminate Father's parental rights and that the evidence does not support a conclusion

**B.** **Child's Best Interests**

Finally, Father also challenges the magistrate court's conclusion that the termination of his parental rights is in the child's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

In this case, the magistrate court's analysis of the child's best interests is essentially limited to a general statement that "every child deserves a safe, secure and clean home environment with a stable caregiver who can meet their medical, physical and emotional needs" and a finding that Father "failed to reunite successfully with the child" despite the Department's "extraordinary and reasonable efforts" to assist Father. On appeal, Father criticizes the court's "absence" of an analysis of the child's best interests as an abuse of discretion.

We agree the magistrate court's abbreviated analysis of the child's best interests did not focus on the factors generally considered when determining a child's best interests. *See, e.g.*, *Doe (2015-03)*, 159 Idaho at 198, 358 P.3d at 83 (identifying factors). This Court, however, does not review the magistrate court's decision for an abuse of discretion. Rather, this Court reviews the magistrate court's decision to determine whether substantial and competent evidence supports the magistrate court's conclusions. As Father concedes, the magistrate court's findings

---

Father abandoned the child by "willfully fail[ing] to maintain a normal parental relationship." *See* I.C. § 16-2002 (defining "abandoned").

7

identified in the "Findings of Fact" section of the court's decision support its conclusion that termination of Father's parental rights is in the child's best interest.

The magistrate court's decision includes factual findings upon which courts have frequently and appropriately relied to reach a determination about a child's best interests. These findings include, for example, that Father "has a history of violence" against Mother and during the course of the case violated a no-contact order. *Id.* (noting court may consider parent's problems with the law). Father "forgot" "to provide food, diapers, and other necessities during [his] visits" with the child and "had not provided any financial assistance for [the child] since the case began." *Id.* (noting court may consider parent's financial contribution to child's care after child is placed in protective custody). Father has lived with his parents for the entirety of the case and "does not show any motivation or ability to seek independent housing," despite being offered the opportunity for independent housing. *Id.* (noting court may consider parent's efforts to improve his situation). Most importantly, the court found the child's serious medical and developmental issues had "improved immensely" while in foster care. *Id.* (noting court may consider improvement of child while in foster care.) Substantial and competent evidence supports these findings. Accordingly, we hold the district court did not err by concluding termination of Father's parental rights is in the child's best interests.

## IV.

## CONCLUSION

We hold that substantial and competent evidence supports the magistrate court's findings that Father neglected the child under I.C. § 16-2002(3) and that terminating Father's parental rights is in the child's best interests. Accordingly, we affirm the judgment terminating Father's parental rights.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.