IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 49251

| In the Interest of Jane Doe I, Jane Doe II, | ) | |
| and John Doe I, Children Under | ) | |
| Eighteen (18) Years of Age. | ) | |
| | ) | |
| STATE OF IDAHO, DEPARTMENT OF | ) | |
| HEALTH & WELFARE, | ) | **Filed:  February 25, 2022** |
| | ) | |
| Petitioner-Respondent, | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| v. | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| JANE DOE (2021-47), | ) | **BE CITED AS AUTHORITY** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Jerome County.  Hon. Stacey DePew, Magistrate.

Judgment terminating parental rights, affirmed.

Rockne K. Lammers, Jerome, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Jane Doe (2021-47) appeals from the judgment terminating her parental rights.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of the three minor children in this action, who were born 2015, 2017, and 2018.  In 2019, Doe contacted the Idaho Department of Health and Welfare, reporting her inability to care for the children due to her mental health and substance abuse issues.  After meeting with a Department safety assessor, the children and Doe tested positive for methamphetamine.

1

The children were declared in imminent danger and were eventually placed into the Department's custody. The magistrate court subsequently approved a case plan for Doe and conducted several review and permanency hearings while the children were in the Department's custody. Ultimately, after more than fifteen months in the Department's custody, the Department filed a petition to terminate Doe's parental rights. After a trial, the magistrate court found by clear and convincing evidence that Doe neglected the children and that termination is in their best interests.[1] Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe argues that the magistrate court's findings that she neglected the children and that termination is in their best interests are unsupported by substantial and competent evidence. The Department responds that clear and convincing evidence supports the magistrate court's neglect

---

[1] The magistrate court also terminated the parental rights of Doe's husband, who was married to Doe when the children were born but is not their biological father, and two other men Doe identified as possible biological fathers. The decision to terminate these individuals' parental rights is not at issue in this appeal.

and best interests determinations. We hold that Doe has failed to establish error and we affirm the magistrate court's termination decision.

## A.    Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court found by clear and convincing evidence that Doe neglected her children. Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act

3

case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court determined that Doe neglected the children as defined in I.C. § 16-2002(3)(b) by failing to complete her case plan during the twenty-six months the children were in the Department's custody. The copy of Doe's plan that was admitted into evidence during the termination trial required her to, among other things: (1) obtain a drug and alcohol assessment and follow all treatment recommendations in the assessment; (2) obtain a mental health assessment and follow all treatment recommendations; (3) provide proof of income to the Department and maintain stable, drug-free housing throughout the pendency of the underlying child protection case; and (4) comply with all requirements of her probation.[2] The magistrate court found that Doe had not completed these case plan tasks. In support of its neglect determination, the magistrate court made the following factual findings.

Doe failed to complete substance abuse treatment, despite expending "substantial effort to gain sobriety." Doe's case manager testified during the termination trial that Doe admitted having a long-term substance-abuse problem and, despite completing multiple drug and alcohol assessments, she failed to complete a drug treatment program with five different treatment providers. Doe was "kicked out" by four of the providers for noncompliance and transferred from a fifth provider when she left Idaho to live with a boyfriend. Additionally, Doe's case manager testified that Doe tested positive for controlled substances more than once during the underlying child protection action. According to the case manager, Doe was honest about her struggles with drug use and sought help, but was unable to maintain sobriety despite receiving services from the Department.

Doe was similarly unsuccessful in addressing her mental health issues. Doe's case manager testified that Doe completed a mental health assessment that recommended "ongoing individual counseling," which she participated in for a time. However, at some point during the

---

[2]     When Doe's case plan was developed, she was serving a term of probation arising from a conviction for driving under the influence.

4

underlying child protection action, Doe was hospitalized after attempting suicide. By the time of trial, Doe's case manager was unaware of any mental health counseling Doe was receiving.

Doe also failed to maintain stable housing or employment throughout the underlying child protection action. More than one Department employee testified that Doe lacked consistent employment at different times during the child protection action. Although the magistrate court found that Doe had stable housing for a time while living in Oregon, it was insufficiently stable to permit the return of the children to Doe's care. Doe's caseworker and Doe's advocate coordinator both testified that Doe did not obtain sufficiently stable housing to provide for the children during the child protection case. Regarding employment, the magistrate court found that, despite orally reporting employment to Department workers, Doe failed to verify that purported employment. This finding is consistent with the testimony of Doe's caseworker.

Finally, during the underlying child protection action, Doe served sixty days in jail after violating the conditions of her probation arising from a conviction for driving under the influence. Doe's probation officer testified that Doe violated her probation by failing to complete drug and alcohol treatment, failing to report to her probation officer as ordered, and failing to pay "some outstanding probation fees." According to Doe's probation officer, Doe's probation was revoked and her service of sixty days in jail satisfied her sentence in the underlying criminal case and resulted in the closure of the case.

Doe asserts that the above findings are "contrary to the evidence presented at trial [and] do not support a finding of neglect." Doe expands on this conclusory argument by alleging that a parent's "ability to work a case plan is severely impacted" by COVID-19, rendering "their ability to visit their children . . . almost totally non-existent." The relevance of this allegation to the magistrate court's factual findings is unclear. Doe presents no cogent argument or evidence in the record that COVID-19 somehow diminished or restricted her ability to complete *her* case plan. For example, Doe has not identified how, if at all, COVID-19 prevented her from completing drug and alcohol treatment or complying with the terms of her probation. Moreover, even assuming that COVID-19 limited Doe's ability to visit the children, the magistrate court did not cite Doe's failure to visit the children as a basis for the finding of neglect. To the contrary, the magistrate court noted that Doe demonstrated her love and devotion to the children by traveling from another state to visit the children on weekends.

5

Doe does not dispute that the children had been in the Department's custody for approximately twenty-six months at the time of the termination trial, which is beyond the statutory goal of achieving reunification within fifteen months. Although Doe was honest with Department employees regarding her struggles with substance abuse, which the magistrate acknowledged, substantial and competent evidence supports the magistrate court's finding of neglect. Accordingly, Doe has failed to show otherwise.

## B.   Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found it is in the best interests of the children to terminate Doe's parental rights in light of her continued substance abuse issues, inability to maintain stable housing and employment, and failure to demonstrate the ability to provide stability for the children. The magistrate court noted that Doe had not reached "a bare minimum of stability and sobriety that would allow the children to return to her care" by the time of trial and that the children could not be safely returned to her for at least another six to twelve months. As discussed above, Doe's case manager testified about Doe's continued struggles with substance abuse and failure to obtain stable housing or employment.

The magistrate court also found that the children were under the care of foster parents who intended to adopt them. Furthermore, despite moving from two, long-term foster placements during the underlying child protection action, all three children's emotional development had improved while under the care of those foster parents. The children's foster mother testified that

6

two of the children had developed to a point where they no longer needed counseling and that the third child was having fewer aggressive outbursts. The foster mother further testified that the two older children were performing well in school and that the youngest child's verbal skills had developed beyond his age level. According to the foster mother, all the children had bonded to her and her husband.

Doe argues that, when "all evidence is considered, there is not substantial and competent evidence to support" a finding that termination is in the children's best interests. However, Doe does not identify any evidence that the magistrate court allegedly failed to consider. Moreover, the essence of Doe's argument seeks to have this Court reweigh evidence relevant to the best interests analysis. It is well established that appellate courts in Idaho do not reweigh evidence. *See Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court determined that, despite making commendable efforts, Doe was unable to "maintain long-term sobriety or stability." Although Doe was honest with the Department regarding her substance abuse issues and demonstrated some protective capacity by initially reporting her inability to care for the children, she was unable to address her substance abuse or demonstrate sufficient stability to provide for the children. Doe has failed to show error in the magistrate court's termination decision.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's determination that Doe neglected the children and that termination is in their best interests. Doe has failed to show error in the magistrate court's decision to terminate her parental rights. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.