# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49790

| | | |
|---|---|---|
| In the Interest of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: August 16, 2022 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| JANE DOE (2022-23), | ) ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate.

Judgment terminating parental rights, affirmed.

Anthony R. Geddes, Ada County Public Defender; Karen L. Jennings, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Peter A. Mommer, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. Doe alleges the magistrate court erred in finding it is in the best interests of the child to terminate Doe's parental rights. Because substantial evidence supports the finding that termination of Doe's parental rights is in the best interests of the child, the judgment terminating Doe's parental rights is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe is the mother to the minor child. Both Doe and the minor child tested positive for methamphetamine at the time of his birth, and the Idaho Department of Health and Welfare (Department) removed the minor child and placed him into foster care on February 8, 2021. The

1

magistrate court granted the Department temporary custody of the child and ordered a case plan for Doe as part of reunification efforts.

On February 28, 2022, the State filed a petition to terminate Doe's parental rights to the minor child. The magistrate court held a termination trial on May 24, 2022. After the trial, the magistrate court found Doe neglected the minor child and termination of Doe's parental rights is in the minor child's best interests. Accordingly, the magistrate court entered a judgment terminating Doe's parental rights to the minor child.[1] Doe timely appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe does not challenge the magistrate court's finding of neglect as a statutory ground to terminate her parental rights, but she does challenge the magistrate court's conclusion that termination of her parental rights is in the minor child's best interests. Specifically, Doe asserts

---

[1]     Father's parental rights were also terminated but are not at issue in this appeal.

that she loves the minor child and that Doe has worked her case plan as best she could, given the traumatic circumstances that she experienced during the course of the proceedings.[2]

A parent has a fundamental liberty interest in maintaining a relationship with her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

---

[2] In a previous child protection proceeding, Doe consented to the termination of her parental rights to four other children, and they were placed with a maternal relative. In April 2021, one of the children died of unnatural causes while in the relative's care. In July 2021, another child died as a result of accidental drowning. Doe argues that "the actions of the state regarding other children of [Doe] not involved in this case set in motion the events which led to [her] trauma and directly impacted [her] mental state and ability to complete her case plan regarding [the minor child] [and] should not be used against [her] in a best interests determination for termination of parental rights." This Court disagrees with the underlying premise that it was the State that set in motion the events that resulted in the death of the children and the trauma Doe suffered as a result of the children's death. Because the underlying factual premise is incorrect, Doe's argument is unpersuasive and, accordingly, will not be addressed.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court acknowledged the traumatic events that occurred during the course of Doe's case and how those events might affect her, but concluded that it was in the minor child's best interests to terminate Doe's parental rights. Specifically, the magistrate court found that Doe had not meaningfully worked towards sobriety, her drug use prevented her from being able to meet the daily needs of an infant or toddler, and the minor child deserved permanency and stability with a sober caregiver who could prioritize his needs. Further, the magistrate court found that the minor child was doing well in his pre-adoptive placement, where he was placed with an older sibling. For example, despite exhibiting symptoms of drug withdrawal shortly after birth, by the time of the termination hearing, the minor child was physically healthy and developmentally on track and other health issues had similarly been resolved. Thus, the magistrate court found that termination of Doe's parental rights to the minor child was in his best interests. This finding is supported by substantial and competent evidence.

During the termination trial, the case manager testified about Doe's conduct during the course of the child protection proceedings, which included substance abuse concerns, missed visitations, untreated mental health issues, and unstable housing. First, the case manager testified she did not believe Doe sufficiently addressed her substance abuse issues so that she could provide the minor child with proper parental care and control; Doe was inconsistent with her urinalysis testing; and when she did submit tests, they were positive for methamphetamine on at least two occasions. Second, while the case manager noted observing Doe's love for the minor child during

4

visitations, because Doe attended less than half of the scheduled visitations, the case manager believed that the minor child is not bonded with Doe. Third, the case manager testified that Doe did not obtain safe and stable housing during the pendency of the proceedings despite being approved for a housing voucher. She further stated that Doe acknowledged at least one of the homes where she stayed was not appropriate for the minor child. As such, the case manager testified that Doe had not demonstrated the ability to provide a stable, continuous residence for the minor child where all his needs are met. Finally, the case manager testified that while Doe was diagnosed with major depressive disorder, she had not followed through with mental health services for the diagnosis. The case manager did not believe that Doe had sufficiently addressed her mental health issues to be able to provide the minor child with proper parental care and control.

Additionally, the case manager testified that, although the minor child was brought into care after testing positive for methamphetamine at birth, by the time of the termination trial, there were no concerns about his physical or mental health or developmental abilities. The case manager explained that the minor child is currently residing with a foster family that is his potential permanent placement where he is doing well and is placed with his biological sister. The case manager testified that the minor child is attached to his sister, and it would be in his best interests to remain placed with her. Ultimately, the case manager believed Doe was not in a position to be reunified with the minor child because Doe had not showed an ability to address the issues that brought the minor child into care, and it is in his best interests for Doe's parental rights to be terminated:

> [The minor child is] 15-1/2 months. He needs permanency. It would not be in his best interest to wait . . . another--however long it might take for his mother to obtain substance abuse, mental health, housing, employment and be able to take care of her son. She's been given that opportunity and has chosen not to take the opportunities to be reunified with him.

Two guardians ad litem testified at the termination trial and offered similar testimony. The first guardian ad litem testified that she did not believe that Doe established that she can provide the minor child the parental care that he needs, had not meaningfully addressed her substance abuse issues, had unstable housing and income, and did not demonstrate the needed level of responsibility for the minor child's safety and well-being. The guardian ad litem believed it would be in the minor child's best interests for Doe's parental rights to be terminated:

> Again, he's 15 months old. He's been in several homes, and there's been virtually no progress made with the parents and their case plan. And I think it's incumbent

5

to find him a good home where he could be home and rely on the care and responsible parent that he needs and deserves . . . he's waited long enough, and there just hasn't been progress.

The second guardian ad litem testified that she worked exclusively with Doe during the proceedings and noted that Doe clearly loves the minor child. However, the guardian ad litem explained that the minor child needs stability, encouragement, and a parent with protective instincts who has the ability to put the minor child's needs first and, despite Doe having over a year to follow through with her commitments under the case plan, she had not demonstrated any of these qualities. Ultimately, the guardian ad litem testified that the minor child requires and deserves stability, and it would be detrimental for him to remain in foster care to allow Doe more time to work her case plan.

During the termination trial, the magistrate court admitted Doe's drug testing records, which showed that she had failed to appear for ninety-eight urinalysis testing appointments and submitted a hair-follicle test that was positive for methamphetamine and cocaine. Doe herself testified that she struggled with substance abuse issues throughout the proceedings; struggled with her sobriety, including missing her urinalysis tests and relapsing; and "dug [her] own hole" during the case. However, due to traumatic events that she experienced during the course of the proceedings, Doe requested more time to work her case plan to show her capabilities:

> [A]lthough I have not had a good track record, that I [request that I] may be allowed an extension. Not because I have weighed out the best interests of [the minor child] . . . but that you also for whatever it's worth, maybe I might have an opportunity to do something with (indiscernible) I just ask that be considered so that I'm able to move forward now.
>
> And not that I wasn't before, but with that opportunity to prove everybody wrong, that I've given that too, but that I'm able to focus 100% on [the minor child] and my case plan with the notion that my girls are okay now.[3]

Taken together, the testimony presented and exhibits admitted during the termination trial support the magistrate court's findings that Doe cannot provide the minor child with a stable, safe, and sober environment and that it would be detrimental to the minor child to remain in foster care for an indefinite period of time in order to provide Doe additional opportunities to work her case plan in hopes of eventually achieving reunification. Substantial evidence supports the magistrate court's finding that termination of Doe's parental rights is in the minor child's best interests.

---

3       Doe testified that she was recently able to bury her two biological children, thus achieving a sense of closure.

6

## IV.
## CONCLUSION

Substantial evidence supports the magistrate court's finding that termination of Doe's parental rights is in the best interests of the child. The judgment terminating Doe's parental rights to the minor child is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.